Anthony D. KOLTON and S. David Goldberg, Plaintiffs-Appellants,

v.

Michael W. FRERICHS, Treasurer of Illinois, Defendant-Appellee.

No. 16-3658

United States Court of Appeals, Seventh Circuit.

Argued April 18, 2017

Decided August 22, 2017

As Amended November 9, 2017

Thomas Arthur Doyle, Attorney, Thomas A. Doyle, Ltd., Terry Rose Saunders, Attorney, Saunders Law Firm, Chicago, IL, for Plaintiffs–Appellants.

Christina T. Hansen, Attorney, Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Defendant–Appellee.

Before EASTERBROOK, KANNE, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

Anthony Kolton deposited money into an interest-bearing bank account in Illinois. Years passed without activity in the account, so the bank transferred Kolton's money to the State of Illinois as the Disposition of Unclaimed Property Act requires. 765 ILCS 1025/13. The Act is not an escheat statute—it gives Illinois custody, not ownership, of "presumed abandoned" property. 765 ILCS 1025/1(*l*), 2, 14. Yet custody generates a windfall for the fisc—most such property gets invested, with any income that accrues earmarked for Illinois's pensioners. 765 ILCS 1025/18. And while owners such as Kolton may file a claim with the Treasurer of Illinois for return of their property, the Act limits the Treasurer to returning the amount received into custody. 765 ILCS 1025/15. In other words, the Act denies owners such as Kolton the time value of money.

Rather than file a claim with the Treasurer, Kolton sued under 42 U.S.C. § 1983. Kolton proposes to represent himself and others similarly situated. (S. David Goldberg, a second putative class representative, need not be mentioned again. Nor do we mention the class, which the district court has not certified.) Kolton contends that 765 ILCS 1025/15—the provision denying owners any interest or other return on their money—violates the Takings Clause of the Fifth Amendment, as applied to the states through the Fourteenth Amendment. See *Chicago, Burlington & Quincy R.R. v. Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897). Kolton seeks damages as well as declaratory and injunctive relief.

■ The Supreme Court has held that the Takings Clause protects the time value of money just as much as it does money itself. *Brown v. Legal Foundation of Washington*, 538 U.S. 216, 235, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003); *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 165–72, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162–65, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). In *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013), we applied these precedents to an Indiana statute like the Illinois statute in this case. We held that a state may not take custody of property and retain income that the property earns. A state may charge a bookkeeping fee, which for small accounts may exceed the property's time value, but must allow the owner the benefit of the property's earnings, however large or small they turn out to be. *Id.* at 578–80.

■ One would have thought this case straightforward after *Cerajeski*, but Kolton lost nevertheless. Relying on *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the judge dismissed this case for want of subject-matter jurisdiction. *Williamson County* holds that a plaintiff usually must try to obtain compensation under state law before litigating a takings suit. *Id.* at 186, 195, 105 S.Ct. 3108. Kolton filed neither a claim with the Treasurer nor a lawsuit in state court seeking just compensation, and the district court deemed these omissions dispositive. 2016 U.S. Dist. Lexis 126178 at *17 (N.D. Ill. Sept. 16, 2016).

An initial problem with the district court's ruling is that *Williamson County* has nothing to do with subject-matter jurisdiction. True, this court has affirmed dismissals for want of subject-matter jurisdiction based on failure to abide by *Williamson County*. See *Peters v. Clifton*, 498 F.3d 727, 734 (7th Cir. 2007); *Patel v. Chicago*, 383 F.3d 569, 570, 573–75 (7th

Cir. 2004); *Sprint Spectrum LP v. Carmel*, 361 F.3d 998, 1001, 1004–05 (7th Cir. 2004); *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 945, 957–61 (7th Cir. 2004). These opinions do not discuss the question whether *Williamson County* is indeed jurisdictional. This court also (in what seems like dictum) once characterized *Williamson County* as about jurisdiction. See *Behavioral Institute of Indiana, LLC v. Hobart Common Council*, 406 F.3d 926, 930–31 (7th Cir. 2005). This may reflect a bygone practice of using the term "jurisdiction" loosely to refer to all obstacles to decision on the merits. *Arnow v. NRC*, 868 F.2d 223, 225 (7th Cir. 1989), overruled by *Builders Bank v. FDIC*, 846 F.3d 272, 274–75 (7th Cir. 2017), is one example. And not just by us, but the Justices too. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160–63, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010), documents those occurrences. The Supreme Court has recently told us that *Williamson County* "is not, strictly speaking, jurisdictional." *Horne v. Department of Agriculture*, 569 U.S. 513, 133 S.Ct. 2053, 2062, 186 L.Ed.2d 69 (2013). That reflects the Court's contemporary understanding of the difference between jurisdictional and ordinary procedural rules. Our decisions cited in this paragraph are no longer authoritative to the extent they deem *Williamson County* jurisdictional. Even before *Horne* they could have been dismissed as drive-by jurisdictional rulings. See *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 91, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). After *Horne* we know that *Williamson County* does not diminish federal courts' adjudicatory competence.

The distinction between subject-matter jurisdiction and the merits matters because judges must enforce limits on jurisdiction even when litigants prefer a substantive decision. If *Williamson County* curtails jurisdiction, then the court must decide in every case under the Takings Clause whether the plaintiff has exhausted procedures for obtaining compensation under state law. The court would have to raise the issue on its own, combing a state's statute books and case law for potential remedies, and decide without the litigants' aid whether each of the potential remedies is adequate. Cf. *Builders Bank*, 846 F.3d at 274–75. That is a prospect to be avoided if possible. We see no reason to depart from the Supreme Court's understanding of *Williamson County* as leaving open the possibility of waiver or forfeiture. See *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, 560 U.S. 702, 729, 130 S.Ct. 2592, 177 L.Ed.2d 184 (2010).

■ Despite treating *Williamson County* as jurisdictional, the district court applied a forfeiture doctrine to one aspect of the case. *Williamson County* requires a person who complains about a taking to pursue *adequate* procedures for obtaining compensation under state law before litigating a takings claim in federal court. 473 U.S. at 195, 105 S.Ct. 3108. The district court thought that Kolton had forfeited any argument that the procedures for obtaining compensation under Illinois law are inadequate, so the court skirted that issue. See 2016 U.S. Dist. LEXIS 126178 at *19. We don't get it. Kolton pointed to the text of 765 ILCS 1025/15 and argued that it precludes the Treasurer from turning over interest and other income that has accrued on property in state custody. Kolton also cited *Cwik v. Giannoulias*, 237 Ill. 2d 409, 341 Ill.Dec. 476, 930 N.E.2d 990 (2010), which held that 765 ILCS 1025/15 is valid even though the state keeps any earnings on the property, and he argued that *Cwik* forecloses any possibility of relief in state court. Kolton has not forfeited a contention that Illinois has demonstrated that no compensation will be forthcoming.

The statute and *Cwik* show that any claim that might have been presented to the Treasurer or a state judge for lost interest and other income would have been pointless, perhaps sanctionably frivolous. Look at 765 ILCS 1025/15: "When property is paid or delivered to the State Treasurer under this Act, the owner is not entitled to receive income or other increments accruing thereafter, except that income accruing on unliquidated stock and mutual funds after July 1, 1993, may be paid to the owner." In a world of muddled statutes, this is crystalline. Plaintiffs do not allege that Illinois took custody of unliquidated stock or mutual funds, and so the statute tells us that plaintiffs are not entitled to income that has accrued on their property. *Cwik* provides judicial reinforcement. There the Supreme Court of Illinois considered a challenge to 765 ILCS 1025/15, observed that the statute "clearly divests the property owner of any right to interest earned on property held by the state" and concluded that this is no problem under the Takings Clause. 237 Ill. 2d at 417, 341 Ill.Dec. 476, 930 N.E.2d 990.

The Treasurer nonetheless insists that Illinois affords plenty of opportunities to ask for compensation and that these opportunities must be used even if plaintiffs are bound to fail. Anyone may file a claim with the Treasurer, who then may hold a hearing and receive evidence before making a decision. 765 ILCS 1025/19–20. A claimant who does not like the decision can seek administrative review. 765 ILCS 1025/21. Beyond that, state courts are open to hear constitutional arguments. A claimant who thinks there has been a taking can go to circuit court. A claimant who instead maintains that the value of the property has been damaged can go to the court of claims. See *Patzner v. Baise*, 133 Ill. 2d 540, 545, 142 Ill.Dec. 123, 552 N.E.2d 714 (1990). Whatever one calls the claim, some forum is available. Illinois says this is all

*Williamson County* requires, citing *SGB Financial Services, Inc. v. Indianapolis-Marion County*, 235 F.3d 1036 (7th Cir. 2000).

■ We do not read *Williamson County* to require resort to state court when state law unequivocally denies compensation. See *Muscarello v. Ogle Board of Commissioners*, 610 F.3d 416, 422 (7th Cir. 2010). It may help to think of *Williamson County* as a rule based on constitutional text rather than as a judge-made exhaustion requirement. The Fifth Amendment does not proscribe takings, but rather takings without just compensation. A takings claim therefore accrues only when the government refuses to pay. *Williamson County* routes plaintiffs to state proceedings when it is uncertain whether the state will pay. We made this point rhetorically in *SGB Financial Services*: "Instead of asking a federal judge to guess what a state court is likely to do, why not ask the state court?" 235 F.3d at 1038. For 765 ILCS 1025/15, someone else has asked, and the highest state court has answered. Illinois will not pay. See *Cwik*, 237 Ill. 2d at 417, 341 Ill.Dec. 476, 930 N.E.2d 990. This leaves Kolton with a federal forum and favorable federal precedent in *Cerajeski*. See 735 F.3d at 578–80.

■ Yet it is not all good news for Kolton. This litigation is under § 1983, which makes "[e]very person" liable for certain acts committed under color of state law. It is against Michael W. Frerichs in his official capacity as Treasurer of Illinois. But a lawsuit against the Treasurer in his official capacity is really one against Illinois, and a state is not a "person" suable under § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Both sides devote attention in the briefing to whether the Takings Clause stands as an exception

to the Eleventh Amendment, but these arguments miss the mark: questions of sovereign immunity do not arise because § 1983 does not create a claim against a state for damages. See *Lapides v. University System of Georgia*, 535 U.S. 613, 617–18, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002). Plaintiffs are entitled to prospective relief under *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). But they cannot parlay success under *Ex parte Young* into a money judgment in federal court because that case rests on the proposition that an officer acts independently when enforcing an unconstitutional law. See *id.* at 159–60, 28 S.Ct. 441. And after all, Frerichs did not pocket any earnings on Kolton's money. Illinois did.

The judgment is vacated, and the case is remanded for proceedings consistent with this opinion.